**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

BENJAMIN CLARK                                CIVIL ACTION

VERSUS                                        NO. 06-3519

RUSSELL BUTLER, WARDEN                        SECTION "C"

<u>**ORDER AND REASONS**</u>

Before the Court is a petition for habeas corpus by Benjamin Clark ("Petitioner"), filed

pursuant to 28 U.S.C. § 2254. Petitioner is seeking relief from his February 11, 2004 conviction

for possession of cocaine under LA. REV. STAT. § 40:967,  for which he was sentenced to

twenty-five (25) years in prison, without the benefit of parole, probation, or suspension of

sentence for the first two years. Petitioner is currently incarcerated at the River Correctional

Center in Ferriday, Louisiana. As grounds for relief, Petitioner's first claim is that the trial

court's rulings deprived him of his right to put on a defense. Petitioner notes that the trial court

denied his motion to reveal the identity of the confidential informant in this matter. Additionally,

Petitioner argues that the trial court erred when it prevented the defense from establishing a

pattern of misconduct by the arresting officer. Next, Petitioner claims that the evidence was

insufficient to sustain a conviction. Finally, Petitioner argues that his sentence is excessive. For

the reasons set forth below, Petitioner is not entitled to relief.

1

I. Case History

The state filed a Bill of Information against Petitioner on October 1, 2002, charging him with possession with intent to distribute cocaine in violation of La. Rev. Stat. § 40:967. State Rec., Vol. 1, Bill of Information. Subsequently, Petitioner filed a motion to suppress evidence and a motion to reveal the identity of the confidential informant. The trial court denied Petitioner's motions on March 18, 2003 and March 20, 2003, respectively. State Rec. Vol. 1, Minute Entries, #10 & #14. On February 11, 2004, Clark waived his right to trial by jury; following a bench trial that day, Petitioner was found guilty as charged. State Rec. Vol. 1, Minute Entry #27. On May 11, 2004, Petitioner was sentenced to twenty-five (25) years at hard labor, without benefit of parole, probation, or suspension of sentence for the first two years. State Rec. Vol. 1, Minute Entry #29. The Louisiana Court of Appeal for the Fifth Circuit summarized the facts of the case as follows:

> Detective Scott Zemlik of the Gretna Police Department testified that a confidential informant ("C.I.") advised him a subject known as "Shorty" was selling crack cocaine at 1938 O'Connor, Apartment 7. On September 9, 2002, Zemlik supplied the C.I. with twenty dollars and sent him to the O'Connor Street residence to attempt a narcotics purchase. Zemlik first searched the C.I. and determined that he did not possess any contraband. From *1010 a concealed vantage point, Zemlik saw the C.I. engage in a hand-to-hand transaction with an individual at the front door of the house. Zemlik was assisted by Sergeant Claude Koenig. Koenig testified that he could not see the person with whom the C.I. was dealing.
>
> When the C.I. returned to Zemlik, he had one off-white rock. Koenig testified that the C.I. identified the seller as "Shorty."[1] Based on the controlled purchase, Zemlik applied for, and obtained, a search warrant for the O'Connor Street apartment. Zemlik and other narcotics officers executed the warrant at about 5:10 a.m. on September 12, 2002.

---

[1] Zemlik testified that he knew Benjamin Clark as Shorty from two previous encounters he had had with him.

Zemlik testified that he and other officers forced open the locked gate at the front door of the apartment. They then used a battering ram to open the locked door. The officers entered the house shouting, "Police, search warrant." They found defendant, Benjamin Clark, in bed with a Ms. Fagan. He was not clothed. They secured Clark and Fagan, and handcuffed Clark. Clark asked the officers if he could get dressed. According to Zemlik, Clark directed the officers to a dresser drawer. Detective Wayne Williams reached into the drawer and pulled out a pair of shorts. A film canister fell from the shorts and onto the floor.

Zemlik picked up the canister and found it contained forty-three off-white rocks, later determined to be crack cocaine.[2] Clark was allowed to dress, and he and Ms. Fagan were taken into the front room of the apartment, where they were supervised by Sergeant Koenig. Zemlik testified that he continued the search. He located an energy bill addressed to Clark at the apartment. He also recovered a set of two-way personal radios, a plate with off-white residue, and some plastic bags containing off-white residue. Koenig testified that, based on his law enforcement experience, he considered the quantity of rocks found at the apartment to be greater than what a person would keep for personal use.

Zemlik advised Clark of his Miranda rights. Clark then told Zemlik that Ms. Fagan had nothing to do with the cocaine, and asked him to let her stay at the apartment. Zemlik testified that, to his knowledge, no one was living at the apartment except Clark.

Detective Williams testified that Clark asked for some underwear, but that he did not ask for any particular shorts. Williams simply went to the dresser and pulled out a pair of shorts at random. Williams testified that when he pulled the shorts out of the drawer, the canister containing cocaine fell out of them. Williams watched Zemlik open the canister, and he saw the rocks of crack cocaine. Zemlik testified that, to his knowledge, Clark was the only person living in the apartment at that time.

*State v. Clark*, 909 So.2d 1007, 1009-10 (La.App 5 Cir. 2005). The Louisiana Fifth Circuit Court of Appeal affirmed Petitioner's conviction and sentence on June 28, 2005. *Id.* at 1018. Next, Petitioner filed a Writ of Certiorari with the Louisiana Supreme Court. Petitioner's application for review was denied without comment by the state Supreme Court on March 17, 2006. *State v. Clark*, 925 So.2d 538 (La. 2006).

---

[2] At trial, the parties entered into a stipulation that the off-white rocks were crack cocaine.

Subsequently, on April 24, 2006, Petitioner filed an application for post-conviction relief with the trial court. On May 17, 2006, the trial court denied Petitioner's application for post-conviction relief. State Rec., Vol. 2, Order of Trial Court. Petitioner applied to the Louisiana Fifth Circuit court for review; the Louisiana appellate court denied Petitioner's application for Post-Conviction Relief June 6, 2006. State Rec. Vol. 2, Order of the Fifth Circuit Court of Appeal. Finally, the Louisiana Supreme Court denied Petitioner's Application for Supervisory and/or Remedial Writs regarding his application for post-conviction relief on March 30, 2007. *State ex rel. Clark v. Butler*, 953 So.2d 67 (La. 2007). Petitioner filed the instant *habeas* petition on June 20, 2006.[3]

## II. PROCEDURAL REVIEW

### A. Custody Requirement

A petitioner must be "in custody" for a federal court to entertain a petition for habeas relief. 28 U.S.C. § 2241(c); 28 U.S.C.§ 2254(a). Physical incarceration satisfies the custody requirement. *See e.g., Maleng v. Cook*, 490 U.S. 488, 491 (1989). Here, Petitioner is incarcerated at the River Correctional Center in Ferriday, Louisiana. Fed. Rec. Notice of Address Change. Thus,

---

[3]Petitioner filed for federal *habeas* relief while his state application for post-conviction relief was still pending. The Court also notes that a *pro se* petitioner files his or her petition for prescriptive purposes on the date that it is signed.  *See Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995); *see also, United States v. O'Kaine*, 971 F. Supp. 1479, 1480 (S.D. Ga. 1997) (inferring that the signature date on the movant's 28 U.S.C.§ 2255 motion to vacate was the date the movant deposited the motion with prison officials for forwarding to the court.); *see also Causey v. Cain*, 450 F.3d 601 (5th Cir. 2006) (noting that the "Supreme Court held that a *pro se* petitioner's notice of appeal is deemed "filed" at the moment it is delivered to prison authorities for forwarding to the district court.").

Petitioner is in custody for the conviction he is attacking. Accordingly, one basis of this Court's subject matter jurisdiction over Petitioner's claim for relief is satisfied.

### B. Venue

Under 28 U.S.C.A. § 2241(d), venue lies in the district in which the Petitioner is incarcerated or the district from which his conviction or sentence was obtained.  Petitioner is incarcerated at the River Correctional Center in Ferriday, Louisiana, which is in Concordia Parish, a parish that falls within the Western District of Louisiana according to 28 U.S.C. § 98(c).  However, Petitioner was convicted and sentenced in Jefferson Parish, which under 28 U.S.C. § 98(a) falls within the Eastern District of Louisiana. Therefore, venue lies for this petition under 28 U.S.C.A § 2241(d).

### C. Timeliness

The State concedes that the petition is timely; upon review, this Court agrees. The Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires that a *habeas* petitioner bring his or her 28 U.S.C.§ 2254 action within one year of the date on which his or her conviction or sentence becomes "final."[4] The Supreme Court has ruled that "finality attaches

---

[4] 28 U.S.C.§ 2254(d) provides:
    (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
        (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
        (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
        (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
        (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
    (2) The time during which a properly filed application for State post-conviction or

when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003); *see also, Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003). Yet, AEDPA's one-year statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court. 28 U.S.C.§ 2254(d)(2); *Fields v. Johnson*, 159 F.3d 914 (5th Cir. 1998). Furthermore, "a properly filed application is one submitted according to the state's procedural requirements, such as the rules governing notice and the time and place of filing." *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999) (quoting *Lovasz v. Vaughn*, 134 F.3d 146, 148 (3rd Cir. 1998) (internal quotations omitted); *Williams v. Cain*, 217 F.3d 303 (5th Cir. 2000).

A petitioner has ninety days to file a writ of certiorari in the United States Supreme Court after a decision is rendered by the state's highest court. Sᴜᴘ. Cᴛ. R. 13(1). As noted above, the Louisiana Supreme Court denied Petitioner's direct appeal on March 16, 2006. *State v. Clark*, 925 So.2d 538 (La. 2006). Petitioner did not appeal to the United States Supreme Court. Therefore, Petitioner's conviction became "final" on June 14, 2006, ninety days after the Louisiana Supreme Court's decision.

In this case, AEDPA's one-year statute of limitations did not run because Petitioner filed his application for post-conviction relief on April 24, 2006, which is prior to the date that his conviction became "final." State Rec. Vol. 2, Application for Post Conviction Relief. AEDPA's statute of limitations remained tolled for the duration of time in which Petitioner's post-

---

other collateral review with respect to the pertinent judgment or claim is pending
shall not be counted toward any period of limitation under this subsection.

conviction relief application was pending in the state judicial system. Here, Petitioner's post-conviction relief application was denied by the Louisiana Supreme Court on March 30, 2007. *State ex rel. Clark v. State*, 953 So.2d 67 (La. 2007). As Petitioner filed the petition *sub judice* on June 20, 2006, the petition is timely because the AEDPA's statute of limitations had not started to run.[5] Stated another way, none of the 365 days allowed under AEDPA's statute of limitations ran because Petitioner filed state post-conviction relief before his conviction was "final" <u>and</u> Petitioner filed for federal *habeas* relief before the state supreme court denied his post-conviction writ application.

### D. Exhaustion

Generally, exhaustion of adequate state remedies is a "condition precedent to the invocation of federal judicial relief under [28 U.S.C.§ 2254]." *Preiser v. Rodriquez*, 411 U.S. 475, 489 (1973). The entirety of the factual allegations and legal theories presented to the federal court must have been presented in a procedurally proper manner to the highest state court, here the Louisiana Supreme Court. *See e.g., Anderson v. Harless*, 459 U.S. 4, 6 (1982) (holding a "habeas petitioner must have fairly presented to the state courts the substance of his federal habeas corpus claim) (internal quotations omitted) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)); *Yohey v. Collins*, 985 F.2d 222, 226 (5th Cir. 1993); *Rose v. Lundry*, 455 U.S. 509 (1982). It is important to note that the issues in a *habeas* petition could have been presented to

---

[5] In this matter, zero days elapsed under AEDPA's statute of limitations. Petitioner's conviction became "final" under AEDPA on June 14, 2006, ninety days after the Louisiana Supreme Court's decision to affirm Petitioner's conviction. However, Petitioner filed for post-conviction relief on April 24, 2006. Thus, AEDPA's statute of limitations was tolled prior to the date that the conviction was "finalized." AEDPA's one-year limitations period remained tolled from April 24, 2006 until March 30, 2007 when the Louisiana Supreme Court denied Petitioner's writ application regarding his claim for post-conviction relief. Petitioner filed for *habeas* relief with this Court on June 20, 2006, while his application for post-conviction relief was still pending in state court. Accordingly, his petition is timely under AEDPA's one-year statute of limitations.

the highest state court on direct appeal, or in a state post-conviction proceeding; either is sufficient and both are not required. *Brown v. Allen*, 344 U.S. 443, 447 (1953); *Myers v. Collins*, 919 F.2d 1074, 1075-77 (5th Cir. 1990).

The exhaustion requirement is now codified by AEDPA, which provides, *inter alia*, that habeas relief "shall not be granted unless it appears that . . . (A) the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C.§ 2254(b)(1). Yet, the United States Fifth Circuit Court of Appeals has noted, 28 U.S.C. § 2254(b)(2) "allows a federal court, in its discretion, to **deny** habeas relief on the merits, regardless of whether the applicant has exhausted state remedies" and whether exhaustion is waived by the state, to further the interests of judicial economy. *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998) (emphasis in original).

Here, the State concedes exhaustion in their response to the *habeas* petition, and the Court agrees that Petitioner's claims are exhausted as required by the AEDPA. In this matter, Petitioner presents four (4) distinct claims for relief in his federal *habeas* petition. Each of these claims was presented to the Louisiana Supreme Court on direct appeal.[6] Accordingly, petitioner has satisfied the AEDPA's exhaustion requirement. *See Myers v. Collins*, 919 F.2d 1074, 1075-77 (5th Cir. 1990).

III. STANDARD OF REVIEW

AEDPA revised 28 U.S.C.§ 2254(d)(1) and (2), furnishing new standards of review for questions of fact, questions of law, and mixed questions of law and fact for *habeas* petitions.

---

[6] *State v. Clark*, 909 So.2d 1007, 1011-18 (La.App. 5 Cir. 2005). The fact that Petitioner's writ for post-conviction relief was denied by the Louisiana Supreme Court after Petitioner filed for *habeas* relief is not material because all of the issues in his *habeas* petition were presented to the Louisiana Supreme court on direct appeal.

The statute mandates that when a state court has adjudicated a claim on the merits, pure questions of law, as well as mixed questions of law and fact, are reviewed under 28 U.S.C.§ 2254(d)(1). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). But, questions of fact are reviewed under 28 U.S.C.§ 2254(d)(2). *Id.*

Regarding questions of law, and mixed questions of law and fact, a federal court must defer to the state court's decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.§ 2254(d)(1).  The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one. *Bell v. Cone*, 535 U.S. 685, 694 (2002) (internal citations omitted).

Yet, a state court's factual findings are presumed to be correct and a federal court "will give deference to the state court's decision unless it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Hill*, 210 F.3d at 485; 28 U.S.C.§ 2254(e)(1).

IV. Petitioner's Claims

**1. Identity of the Confidential Informant**

Petitioner claims that the trial judge was not justified in protecting the identity of the confidential informant in this matter. Fed. Rec., *Habeas* Petition, p. 5. Specifically, Petitioner

argues that "the accused has a fundamental due process right to know the exact identity of such informant in order to present a legitimate defense against prosecution." *Id*. The state asserts that the judge did not err because disclosure of the informant's identity was not necessary under the Fifth Circuit's three (3) part test.

In *U.S. v. Sanchez*, the Fifth Circuit "developed a three-part test to determine whether disclosure of the informant's identity or communication is required." 988 F.2d 1384, 1391 (5th Cir. 1993). The test consists of "1) the informant's degree of involvement in the crime, 2) the helpfulness of the disclosure to the defense, and 3) the Government's interest in nondisclosure." *Id.* The state appellate court addressed this issue during Petitioner's direct appeal, it held:

> [Officer] Zemlik testified that he applied for and obtained a search warrant for the O'Connor Street apartment. Probable cause for the warrant was based on the C.I.'s controlled drug purchase at that address. The officer testified that the C.I. was not present on September 12, 2002, when the search warrant was executed.
>
> The defense argued that the C.I. played a crucial role in the transaction that led to his arrest, and he was, therefore, entitled to know the C.I.'s identity. The State countered that the charge in this case was actually based on the evidence seized in the search of the apartment. The C.I. did not play a crucial role in the transaction that led to Clark's arrest, because he did not participate in the search. The trial court denied Clark's motion without reasons.
>
> The trial court did not err in denying Clark's motion. The C.I.'s drug purchase supplied Zemlik with the probable cause he needed to obtain the search warrant. But the informant's participation was not integral to the transaction (i.e., the search) that uncovered the cocaine that was the basis for the instant charge.
>
> Clark failed to show that the C.I.'s testimony was crucial to a fair trial. Even if the C.I. had testified that someone other than Clark sold him the cocaine on September 9, 2002, such testimony would have had little or no bearing on the outcome of the trial. Clark was not charged with distribution of cocaine on September 9, but with the possession of cocaine with intent to distribute on September 12, 2002.

*State v. Clark*, 909 So.2d 1007, 1015-16 (La.App. 5 Cir. 2005).

In this case, the Louisiana Fifth Circuit Court of Appeal did not specifically analyze Petitioner's claim by reference to the three-prong test utilized by *United States v. Sanchez*; yet, its analysis was consistent with that used in federal cases. Relevant to the first prong, the state court found that the informant's role was minimal because the main evidence against Petitioner was the contraband seized from his house, not the statements of the informant. Regarding the second prong, the state court noted that disclosure would not have benefitted the defense because Petitioner was charged with possession of cocaine with the intent to distribute on September 12, 2002, when the informant was not present. Although the state court did not make a finding relevant to the third prong, the government's interest in nondisclosure, a court "is not required to examine the third prong when the defendant has failed to produce evidence which supports the first two prongs." *Sanchez*, 988 F.3d at 1392. While the search warrant was based on the September 9 purchase at Petitioner's residence, and Petitioner disputes whether he was the person selling drugs that day, he did not dispute that it occurred at that location.

Petitioner has failed to establish that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Accordingly, applying the AEDPA's deferential standard, this Court rejects Petitioner's claim that his federal constitutional rights were violated by the state court's refusal to order the prosecution to reveal the identity of the confidential informant.

### 2. Arresting Officer's Prior Conduct

Petitioner asserts that he should have been allowed to "establish a pattern of misconduct on the part of the arresting officer" to create reasonable doubt. Fed. Rec., *Habeas* Petition, p. 5.

The state asserts that the trial judge properly constrained cross-examination of the arresting officer within reasonable limits.

"[T]he Sixth Amendment guarantee of a criminal defendant's right to confront witnesses against him includes the right to cross-examination." *Bigby v. Dretke*, 402 F.3d 551, 573 (5ᵗʰ Cir. 2005) (citing *Davis v. Alaska*, 415 U.S. 308, 315 (1974)). However, *Bigby* notes that the right to cross-examine "is subject to the wide latitude of trial judges to impose reasonable limits." *Id.* Therefore, "the Confrontation Clause does not guarantee defendants cross-examination to whatever extent they desire." *Id.* Additionally, "[a] trial judge has discretion to impose reasonable limits on cross-examination based on concerns about harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Kittelson v. Dretke*, 426 F.3d 306, 319 (5th Cir. 2005) (quoting *Davis v. Alaska*, 415 U.S. 308, 315 (1974)). Finally, "[a] federal court may grant habeas relief based on an erroneous state court evidentiary ruling only if the ruling violates a specific federal constitutional right or is so egregious that it renders the petitioner's trial fundamentally unfair." *Id.* at 320 (quoting *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir.2005)). Indeed, "[a] complaint that the trial court unduly restricted cross-examination of a state's witness is a mixed question of fact and law, and on federal habeas review is subject to harmless error analysis under *Brecht v. Abrahamson*[7]." *Allen v. Quarterman*, 2007 WL 2198091, at *6 (N.D.Tex., July 31, 2007). Consequently, Petitioner must show that the trial court violated his right to confrontation and that the violation contributed to the verdict. *Id.* (internal citations and quotation marks omitted).

The state appellate court addressed Petitioner's claim on direct appeal:

---

[7] 507 U.S. 619 (1993).

While cross-examining [Officer] Zemlik at trial, defense counsel asked the officer whether he had been terminated by the Jefferson Parish Sheriff's Office eight years earlier on a brutality charge. The State objected to the question on grounds that it was irrelevant. The following exchange ensued:

THE COURT: What's the relevance of that?

MR. EHLE [defense counsel]: Judge, my defense is that Officer Zemlik harassed and intimidated and brutalized Lorraine Martin and Benjamin Clark. And I know for a fact that he was terminated from Jefferson Parish for brutality, and I'd like him to answer that question.

THE COURT: Why is that relevant to this case?

MR. EHLE: Because it corroborates what Benjamin Clark is going to testify to.

MR. GRISBAUM [prosecutor]: I don't think so, Your Honor.

THE COURT: I don't really think that's relevant.

MR. EHLE: If he was terminated from Jefferson Parish for brutality, I think that's relevant to this case. I mean-

THE COURT: Was he terminated for brutalizing Benjamin Clark?

MR. EHLE: No ma'am, he was not.

MR. GRISBAUM: Then it's not relevant.

THE COURT: I don't find that to be relevant.

MR. EHLE: Note my objection.

THE COURT: Okay. So noted.

After a review of the record we find that the trial court did not err in its ruling. A termination of employment that allegedly took place eight years prior to the commission of the instant offense clearly had no relevance to this case. Although an accused has a constitutional right to present a defense, this does not require a trial court to admit evidence that is irrelevant.

*State v. Clark*, 909 So.2d 1007, 1016-17 (La.App. 5 Cir. 2005).

13

In this matter, the state appellate court found no error in excluding the evidence. Even assuming that the trial court did error, this Court finds that there is no reasonable probability that petitioner's inability to admit evidence of the arresting officer's alleged misconduct contributed to the verdict. Accordingly, Petitioner has failed to establish that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Therefore, Petitioner's claim lacks merit.

### 3. Sufficiency of the Evidence

Next, Petitioner claims that there was insufficient evidence to convict him. Fed. Rec., Petition for Habeas Corpus, p. 5. The state asserts that Petitioner's claim lacks merit because the state courts have not violated *Jackson v. Virginia* in this case.

First, the Court notes that a claim of insufficient evidence presents a mixed question of law and fact. *Taylor v. Day*, 1999 WL 195515, at *3 (E.D.La. Apr. 6, 1999), *aff'd*, 213 F.3d 639 (5th Cir.2000). Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent. The well established federal standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) requires the court to determine whether, after identifying the elements of the offense as defined by state substantive law and viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt. *Donahue v. Cain*, 231 F.3d 1000, 1004 (5th Cir.2000).

Petitioner was charged and convicted of possession with the intent to distribute cocaine in violation of LA. REV. STAT. § 40:967. To prove possession with intent to distribute under Louisiana law, the State must show that a defendant knowingly or intentionally possessed the

14

drug, and that he did so with the specific intent to distribute it. LSA-R.S. 40:967(A). Specific intent is defined as, "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). Additionally, "specific intent" may be inferred from the circumstances of a transaction and from the actions of the accused. *State v. Robinson*, 846 So.2d 76, 80, 81 (La.App. 5 Cir. 2003). Finally, several factors are considered in determining whether a defendant exercised dominion and control sufficient to constitute possession of illegal drugs: "(1) the defendant's knowledge that illegal drugs were in the area; (2) his relations with the person found to be in actual possession; (3) the defendant's access to the area where the drugs were found; (4) evidence of recent drug use by the defendant; (5) the existence of paraphernalia; and (6) evidence that the area was frequented by drug users." *State v. Lee*, 864 So.2d 654, 660 (La.App. 5 Cir. 2003).

As noted by the state appellate court, "the cocaine was found in a dresser drawer containing Clark's clothing, in Clark's bedroom." *State v. Clark*, 909 So.2d 1007, 1014 (La.App. 5 Cir, 2005). Additionally, "Clark testified that he was the only person living in the apartment, and that no one else kept their clothing there." *Id.* The Court agrees with the state courts that Petitioner had dominion and control over the seized cocaine because the record reflects that the Petitioner had access to the area where the drugs were found. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt. *Donahue*, 231 F.3d at 1004. Accordingly, this Court cannot find that the decision reached by the state court to uphold Petitioner's conviction was contrary to, or an unreasonable application of federal law under *Jackson v. Virginia*. Consequently, this claim is dismissed.

15

### 4. Excessive Sentence

Finally, Petitioner claims that the trial court imposed an excessive sentence. Specifically, Petitioner argues that the twenty-five year sentence was disproportionate to the crime. The state notes that Petitioner was sentenced within the range set forth by the Louisiana legislature for the conviction.[8]  If a sentence is within the statutory limits, a federal *habeas* court will not upset the terms of that sentence "unless it is so disproportionate to the offense as to be completely arbitrary and shocking." *Bonner v. Henderson*, 517 F.2d 135, 136 (5th Cir. 1975); *see also Smallwood v. Johnson*, 73 F.3d 1343, 1347 (5th Cir.1996) (emphasizing that a federal court will not review a state sentencing without a threshold showing that the sentence is "grossly disproportionate to the offense").

The Supreme Court has recognized that the precise contours of the "grossly disproportionate" standard are not clear, but that court has held that the principle applies only to "exceedingly rare" and "extreme" cases. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003). In his state court filings, Petitioner noted that his sentence (twenty-five years) is at the upper portion of the statutory range of punishment. On that basis, he argued that the state courts acted in violation of the appropriate sentencing guidelines. However, federal courts must reluctantly review legislatively mandated terms of imprisonment. *See Hutto v. Davis*, 454 U.S. 370, 374 (1982) (per curiam). A review of Petitioner's offense and his criminal history, as compared to the sentence imposed, does not establish an exceedingly rare or extreme case that might warrant a finding of a grossly disproportionate sentence in violation of the Eighth Amendment. *See Rummel v. Estelle*, 445 U.S. 263 (1980) (mandatory life sentence imposed following defendant's third felony

---

[8] The statutory sentencing range for possession of cocaine with intent to distribute is two to thirty years. L.S.A. 40:967(B)(4)(b). Petitioner was sentenced to twenty-five years imprisonment.

conviction for obtaining $120.75 by false pretenses did not constitute cruel and unusual punishment). Accordingly, Petitioner's claim for relief lacks merit.

### V. CONCLUSION

Having considered the complaint, the record, and the applicable law, it is determined that Petitioner's claims are without merit. Accordingly, it is **ORDERED** that the petition of Benjamin Clark be **DENIED WITH PREJUDICE**. Judgment will be entered accordingly.

New Orleans, Louisiana this 20th day of February, 2008.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE